# ADA J. B. MILLAR v. ST. LOUIS TRANSIT COMPANY and UNITED RAILWAYS COMPANY; ST. LOUIS TRANSIT COMPANY, Appellant.

## Division One, December 23, 1908.

1. **NEGLIGENCE: Pleading: Reasonable Time to Alight.** A petition which charges the relation of passenger and carrier, by that charge imposes upon the carrier the duty to safely carry the passenger and to give him a reasonable time and opportunity to safely alight from the car.

2. ————: ————: ————: **Concurrent Acts: Starting and Stopping Car.** So that a petition charging the relationship of carrier and passenger, and also charging that while the passenger "was in the act of passing to the steps of said rear platform in his attempt to alight from said street car and before he had a reasonable time or opportunity to alight from said car, defendant, unmindful of its agreement with him and of its duty in the premises, did, by its servants in charge of and managing said car, negligently cause and permit said car to suddenly and without warning start and go forward with a sudden motion and jerk for a few feet, and then stop with a sudden shock and jerk, whereby" the passenger "was caused to fall and be thrown and thereby injured," charges as the gist of the action that defendant failed of its duty to stop said car for such reasonable time as was required to allow the passenger to alight therefrom in safety; and what is said about starting the car and afterwards stopping it is but descriptive of the main charge, namely, negligent failure to stop for a reasonable time to alight. The petition would have stated a cause of action without those allegations. Therefore, plaintiff's cause of action is not to fail for that he proved the negligent stopping but did not prove (as defendant contends) the negligent starting. Besides, tested by a fair reading the charge means that the passenger was injured by one continuous act (including the stopping and starting) which was negligently performed.

3. ————: **Starting Car After Signal.** Any movement of a street car after a signal to stop has been given and prior to an expiration of a reasonable time to the passenger in which to alight, is negligence.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Boyle & Priest, F. S. Whitelaw* and *T. E. Francis* for appellant.

(1) Appellant's demurrer to the evidence should have been sustained at the close of the whole case. Bartley v. Railroad, 148 Mo. 124; Williams v. Railroad, 78 S. W. 45. The negligence charged consists of the doing of two distinct and separate things, namely, the sudden start without warning, and the stop within a few feet with a sudden jerk and shock, whereby deceased was caused to fall and be thrown. Before respondent can recover on this allegation, which is the only assignment of negligence, it devolved upon her to prove the two acts of negligence, viz.: a negligent start, which under the testimony we concede is established, and a negligent stop, which under the testimony we contend is not established. (2) The court erred in giving the first instruction on behalf of plaintiff, because a part of the charge of negligence therein submitted (that the car was negligently stopped) is not sustained by the evidence. Bartley v. Railroad, 148 Mo. 124; Price v. Railroad, 125 Mo. App. 67. By this instruction, the jury were charged that if they believed from the evidence that the motorman caused and permitted the car, suddenly and without warning, to start and go forward while the plaintiff's deceased husband was in the act of alighting therefrom, and that after the same had moved forward a few feet, he caused and permitted the same to stop with a sudden shock and jerk, by reason whereof decedent was caused to fall and receive injuries resulting in his death, they should find for plaintiff. To return a verdict for plaintiff under this instruction, it was absolutely essential that the jury find plaintiff's deceased husband's injuries to have been the direct result of two conjunctive acts of negligence of defendant, namely, negligence in causing the car to start while deceased was alight-

ing therefrom, and negligence in stopping the car with a sudden jerk or shock; that these two acts of negligence together caused the injuries out of which this suit arose.

*Earl M. Pirkey* and *Lon O. Hocker* for respondent.

(1) The evidence to support the allegation of negligence shows that the entire occurrence happened within a few seconds of time. The whole action of the car amounted simply to a lurch of the car. The witness testifies in direct language that the car started suddenly, went forward two or three feet, and stopped with a jerk. If a car starts suddenly and progresses only two or three feet and stops with a jerk the stop must have been a sudden jerk. A body of the size and momentum of a car could not do otherwise, and the evidence shows that the whole occurrence was continuous and momentary. The evidence shows also that the starting of the car threw the deceased southward and that when the car stopped he was thrown northward against the body of the car. This shows that the stop was with a sudden shock and jerk. Therefore, the charge of negligence in the petition and in the general instructions is fully and clearly established. (2) Even if the evidence did not show a sudden stop and jerk on the part of the car defendant would still be liable because the evidence does show that the start was negligent. The jury found that the entire action of the car caused the deceased to fall, the motion of the car all happened after the car had come to a dead stop and while deceased was on the step of the car attempting to alight. Now if, as the jury found, the starting of the car was a direct cause of his fall, defendant is liable. It is not necessary for plaintiff to prove all he alleges, where what he does prove is alleged and is sufficient to sustain his case. Hartpence v. Rogers, 143 Mo. 632; Gannon v. Gas

215 Sup—39

Light Co., 145 Mo. 502; Grace v. Railroad, 156 Mo. 306; Becker v. R. E. & Bldg. Co., 174 Mo. 250; Hurley v. Railroad, 120 Mo. App. 266.

GRAVES, J.—Plaintiff, Ada J. B. Millar, by her action in the circuit court of the city of St. Louis, sued both the St. Louis Transit Company and the United Railways Company, for the negligent killing of her husband, William J. L. Millar. By the petition, both defendants are charged as being "corporations duly organized and existing under and by virtue of the law of the State of Missouri as common carriers of passengers for hire, and at said times and as such, owned, used and operated the railway line and cars hereinafter mentioned for the purpose of carrying passengers for hire from point to point in the city of St. Louis, State of Missouri, as a street railway." The petition then, after making the allegation that Mr. Millar was a passenger upon a car, charges negligence thus:

"That at said northeast corner of Sixth street and Franklin avenue said car was stopped by defendants by their servants then in charge of and managing said car, for the purpose of allowing said William J. L. Millar to alight therefrom, whereupon plaintiff's said husband immediately started to leave said car by way of the rear platform, which is and was the customary and usual way for passengers to leave the cars of defendants, but while he was in the act of passing to the steps of said rear platform in his attempt to alight from said car and before he had a reasonable time or opportunity to alight from said car, defendants, unmindful of their agreement with him and of their duty in the premises, did, by their servants in charge of and managing said car, negligently cause and permit said car to suddenly and without warning start and go forward with a sudden motion and jerk for a few feet, and then stop with a

sudden shock and jerk, whereby said William J. L. Millar was caused to fall and be thrown and thereby be greatly injured in his spine, body, limbs, internal organs, and nervous system. That by reason of his said injuries so sustained the said William J. L. Millar died on the eighteenth day of December, 1904. That by reason of the foregoing facts and the statute in such cases made and provided, plaintiff is entitled to sue for and recover the sum of five thousand dollars, for which amount she prays judgment.''

To this petition both defendants filed demurrers which were overruled and they answered over, which answers were each a general denial. Upon trial ten of the twelve jurors found for plaintiff in the sum of $5,000 as against both defendants, upon which verdict judgment was entered. Upon motion for new trial the court vacated and set aside the judgment in so far as the United Railways Company was concerned, but left it stand as to the Transit Company. From this judgment cross-appeals were taken, and that by the Transit Company is numbered in this court 13118, and the appeal taken by Mrs. Millar against the United Railways Company is numbered 13392.

After judgment and pending appeal the plaintiff, Mrs. Millar, died, and but for this fact we would dispose of both cases in one opinion. In the Transit Company appeal her death has been suggested and her administrator duly substituted. In the other case objection is made to this procedure. We will therefore take up the appeal and facts in the Transit Company case first, and then later, by separate opinion, discuss the additional questions in the United Railways Company case wherein Mrs. Millar was appellant. From the abstract it appears at the beginning of the trial, the following admission was made:

''Counsel for defendants admits that in 1899, and since that time, the United Railways Company, the defendant, has been the owner of what is known as

the Lee Avenue line in this city, that is, including the street cars and equipment.''

The evidence tends to show that the deceased, an aged physician, with his son Reginald Millar, a young physician, aged twenty-seven years, boarded a car on the Lee Avenue line at the corner of Sixth and Locust streets, in the city of St. Louis, April 23, 1904. They desired to go upon this line to Sixth and Franklin avenue, where they expected to transfer to another line to reach their home, 4043A Cozens avenue. The father seated himself inside the car and the son remained on the rear platform. The fares were paid and the proper transfers procured. The son, who is the only witness testifying in the case upon the manner of the accident, says:

"Q. And the conductor gave you two transfers for that point? A. Yes, sir.

"Q. That entitled you to passage at Sixth and Franklin west on Franklin avenue? A. Yes, sir.

"Q. On what is familiarly known as the Easton avenue line? A. Yes, sir.

"Q. When the car approached Franklin avenue, just state what occurred, was any signal given? A. A signal was given, or I told the conductor that I wanted to alight, and a signal was given for the car to stop.

"Q. That is, you mean by the conductor to the motorman? A. By the conductor to the motorman. The car came to a stop, father got up—

"Q. Where did it come to a stop? A. About three feet from the proper crossing.

"Q. Three feet which way? A. Three feet south.

"Q. The rear platform was three feet south of the crossing? A. Yes, sir.

"Q. Go ahead. A. Father came out on the platform and started to step off, the car started forward two or three feet and stopped with a jerk, he fell to the

floor of the platform, fell from the car, and I jumped off and picked him up, carried him or assisted him to the curb on the east side of Sixth street.

"Q. When the car first came to a stop where was your father? A. Inside the car.

"Q. In what attitude, sitting or standing? A. He had stood up in the car and when the car came to a stop he walked out.

"Q. What was your position on the car when he started to move? A. I stood on the platform.

"Q. Any one else there that you observed? A. The conductor only.

"Q. Now, when the car started up from its original standing position where was your father standing, and facing in what direction? A. He was facing the east and was standing on the step of the car.

"Q. Was that a car with one or two steps? A. I do not remember.

"Q. Standing on the step; now, when the car started, did it start suddenly, quickly, or how? A. Yes, sir; it started suddenly.

"Q. What effect did that have on your father? A. It caused him to fall south.

"Q. Was he holding to anything? A. He had hold of the grab rail on the body of the car.

"Q. That is with his left hand? A. With his left hand, yes, sir.

"Q. And towards the north? A. Yes, sir.

"Defendant's counsel objects as leading.

"Q. You say that caused him to fall to the south? A. Yes, sir.

"Q. Then what occurred? A. The car stopped and he fell against the body of the car and lost his footing and fell with his back on the platform.

"Q. Did he fall off of the car? A. He did fall clear to the street.

"Q. You came to his assistance? A. Yes, sir.

"Q. What became of the car? A. The car went on its way immediately, as soon as I had picked him up off of the step.

"Q. Did the conductor say anything to you at that time? A. No, sir; he said nothing to me."

A long and rigid cross-examination by eminent counsel for defendant did not shake this description of the accident, but if anything only rounded out the description. The deceased lived from April 23, 1904, to December 18, 1904. The evidence for plaintiff tends to show that there was a bruise on one side of the spinal cord in the neighborhood of the small of the back, which caused what is known as traumatic paralysis, from which Dr. Millar finally died. The deceased had been an active man up to the date of the accident, but took to his bed then and so remained until his death. Defendants' evidence tended to show the disease to have been thrombotic paralysis, rather than traumatic. The evidence for plaintiff shows that the rear platform is the usual and ordinary place to enter and depart from cars, and further that the car in question was being operated by employees of the defendant Transit Company.

The court gave an instruction for plaintiff as follows:

"The court instructs the jury that if you find from the evidence that the plaintiff was the wife of William J. L. Millar at the time of his death, if you find that he died, as mentioned in the evidence, and that the defendant St. Louis Transit Company was on April 23, 1904, operating and using cars on a street car line on Sixth street in the city of St. Louis, State of Missouri, to carry passengers for hire from one point to another, and that on said day said William J. L. Millar was received as a passenger on one of said cars at Sixth and Locust streets, and paid his fare to the conductor of said car, and that said car was in charge of a conductor and motorman of said

defendant, and that said car was stopped at the north-east corner of Sixth street and Franklin avenue to discharge passengers therefrom, and that said William J. L. Millar immediately started to leave said car by way of its rear platform and that the rear platform was a usual and customary way for passengers to leave the said cars of defendant, and that in attempting to so leave said car he was in the act of passing to the steps of said rear platform, and that while in said act and before he had a reasonable time or opportunity to alight from said car, the said motorman of said car caused and permitted said car to suddenly and without warning start and go forward with a sudden motion and jerk for a few feet and then stop with a sudden shock and jerk, and that thereby said William J. L. Millar was caused to fall and be thrown and thereby receive an injury in his back, and that said injury was the direct cause of his death, and that he died on December 18, 1904, and that said motorman, in so causing and permitting said car to suddenly and without warning start and go forward with a sudden motion and jerk for a few feet and then stop with a sudden shock and jerk, if you find from the evidence this occurred, did not exercise a high degree of care, such as a very careful and skillful motorman would exercise under the same or similar circumstances, then your verdict should be in favor of the plaintiff, and against the defendant St. Louis Transit Company; and if the jury further find from the evidence that the defendant United Railways Company of St. Louis, on April 23, 1904, owned the street car line and street cars mentioned in the testimony; and that the same was being operated by the defendant St. Louis Transit Company under the lease offered in evidence from the United Railways Company of St. Louis, then you will also find in favor of plaintiff against said defendant United Railways Company of St. Louis.

"The court instructs the jury that in case they find their verdict in this cause in favor of the plaintiff, they will assess her damages at the sum of $5,000."

And one for the defendants as follows:

"The jury are the sole judges of the testimony of the witnesses. In determining the weight to be attached to the testimony of any witness, the jury should consider the reasonableness of his or her testimony as affected by all the surrounding facts and circumstances, the manner and demeanor of the witness while on the stand, and the interest of the witness in the result of this litigation. The jury are not bound by the testimony of any witness, even though uncontradicted, if under all the circumstances they believe the facts to be otherwise than as testified to by such witness.

"If after hearing all the evidence, the jury are unable to determine how the plaintiff's husband came to his death, and are in doubt as to the cause of his death, your verdict should be for the defendant."

And one of its own motion to effect that nine jurors might return a verdict.

The court refused the following instruction asked by defendants:

"The length of time elapsing between the time of the alleged injury to the plaintiff's husband and the notification of that injury to the defendants should be taken into consideration by the jury in weighing the evidence.

"The jury are instructed that under the law and the evidence your verdict must be for the United Railways Company of St. Louis.

"The jury are instructed that under the law and the evidence your verdict must be for the St. Louis Transit Company."

The verdict and judgment were as above stated and the cross-appeals as above stated. This sufficient-

ly states all facts for the disposition of the Transit Company's appeal.

I.   Defendant St. Louis Transit Company urges that the demurrer to the evidence should have been sustained.   The bone of the contention is succinctly stated by counsel thus:

"The negligence charged consists of the doing of two distinct and separate things, namely, the sudden start without warning and the stop within a few feet with a sudden shock and jerk whereby deceased was caused to fall and be thrown.   Before respondent can recover on this allegation, which is the only assignment of negligence, it devolved upon her to prove the two acts of negligence, viz.: a negligent start, which under the testimony we concede is established, and a negligent stop, which under the testimony we contend is not established."

Learned counsel make an able, but to our mind an exceedingly refined argument, to the effect that the petition charged the injury to be the result of two concurrent acts of negligence, i. e., (1) the negligent starting of the car (which counsel conceded), and (2) the negligent stopping of the car (which counsel deny).

In other words, counsel in brief admit that the evidence shows the negligent starting of the car whilst deceased was in the act of alighting, but contend that this evidence fails to disclose the negligent stopping of the car, and, as they so learnedly contend, the action being based upon two concurrent acts of negligence, both must be shown, and a failure to show one or the other is a failure to prove a case for the plaintiff. In cases where the right to recover depends solely upon the proof of two concurrent negligent acts and where the petition so outlines the case, there may be substance in the contention of counsel.   We take it that there has been a misconception of the petition in the case at bar.   This   petition charges the relation of

passenger and carrier. This charge of itself, if shown, imposes upon the defendant, as a carrier of passengers, certain duties, among others to safely carry, and to give a reasonable time and opportunity to alight from the car. A failure to so carry would be negligence in law. Such negligence would appear from a statement of the facts. This petition after properly alleging the relationship of passenger and carrier, says: ''but while he [plaintiff's husband] was in the act of passing to the steps of said rear platform in his attempt to alight from said car and before he had a reasonable time or opportunity to alight from said car, defendants, unmindful of their agreement with him [meaning the implied agreement to safely carry and give a reasonable time and opportunity to alight from the car raised by the relationship pleaded] and of their duty in the premises [which duty likewise contemplated the same things], did, by their servants in charge of and managing said car, negligently cause and permit said car to suddenly start,'' etc.

When the whole charge is analyzed the gist of this action, to our mind, is a charge that defendant failed of its duty to stop said car for such reasonable time as was required to allow the deceased to alight therefrom in safety. What was done toward starting the car and afterwards stopping it, was but descriptive of the method and manner by which the failure to stop for a reasonable time occurred. The petition would have stated a cause of action without these allegations. When there is a charge of the relationship of carrier and passenger, the law fixes the duties, and when this is followed by an allegation of a failure to stop for a reasonable time to enable a passenger to alight in safety, a complete case is stated. Other matters stated might be treated as surplusage.

But aside from this the fair reading of the charge would mean that plaintiff's husband was injured by one continuous act, including the start and the stop,

which said continuous act was negligently performed. So that viewing it from any standpoint, we are not convinced that there is merit in defendant's contention under this point. MARSHALL, J., in Grace v. Railroad, 156 Mo. l. c. 300, draws a distinction which might well be applied here. In the case at bar the signal to stop had been given, and any movement of the car thereafter, and prior to the expiration of a reasonable time in which to alight in safety, was negligence. It was in violation of the implied contract to safely carry and discharge a passenger, which duty the law imposes upon a carrier. To safely discharge the passenger should be construed to mean a reasonable time and opportunity for the passenger to alight in safety.

II. The second, and only other, insistence made by defendant, is couched in this language in the brief: "The court erred in giving the first instruction on behalf of plaintiff, because a part of the charge of negligence therein submitted (that the car was negligently stopped) is not sustained by the evidence."

This is but a repetition of the same question. What we have said under the previous point has equal application here and a further discussion would lend no further light.

We might add that to the real merits of this case the defendant Transit Company made but little defense. It introduced no evidence contradicting the evidence that deceased was a passenger, nor as to the manner in which the accident occurred. That deceased died from the injury received could well be found by the jury. The only evidence in opposition was to the fact that his paralysis was not due to an injury. On the other hand, he was shown to have been extremely well and active prior to this accident. The physician called within a day or two after the accident found a blue place near to or on the spinal cord, which indicated a blow there. The description of his fall

would indicate a blow there. He immediately took to his bed and there remained until death. At the first examination paralysis was discovered, and from this the experts say he finally died.

Taking this whole record we have no hesitancy in saying that as to the St. Louis Transit Company, the case has been fairly tried and determined and the judgment will be affirmed.

All concur.