EUNICE A. COOKE, Appellant, v. SPRINGFIELD TRACTION COMPANY, Defendant.

Springfield Court of Appeals, June 6, 1910.

1. STREET RAILWAYS: Injury to Passengers: Sufficiency of Evidence. A passenger on a street car, an old man, gave the signal to stop, and while the car was slowing up he began to get ready to get off. As the car came almost to a standstill, the evidence tended to show that it was started suddenly with a jerk and the passenger fell and was injured, from the effects of which he died. There was also evidence tending to show that the conductor knew the passenger was about to alight. The evidence is examined and held sufficient to entitle plaintiff, the widow of deceased, to go to the jury, and that the trial court erred in sustaining a demurrer to plaintiff's evidence.

2. **CARRIERS OF PASSENGERS: Street Railways: Starting Car with Sudden Jerk: Negligence.** The rule is established that it is the duty of the carrier to exercise a high degree of care for the safety of its passengers, and it is equally well settled that to start a car with a sudden jerk while the passenger is in the act of alighting therefrom is a breach of the obligation that the carrier owes to the passenger and is evidence of negligence.

3. **NEGLIGENCE: Street Railways: Injury to Passenger: Physical Condition of Passenger.** In a suit against a street railway company for negligence causing the death of a passenger, the physician who waited on the deceased testified that he was weak and very feeble, and would not have lived but a short time even though he had not received the injuries. There was testimony tending to prove the negligence of the company, and that the injury received shortened the life of deceased. *Held,* that the questions were for the jury.

4. **APPELLATE PRACTICE: Omissions from Abstracts.** Respondent complained that much of the testimony in the case had been omitted from appellant's printed abstract, but respondent filed no additional abstract. *Held,* that the abstract on file in the appellate court must be accepted and the case considered on the evidence therein contained.

Appeal from Greene Circuit Court.—*Hon. George Pepperdine,* Special Judge.

REVERSED AND REMANDED.

*A. H. Wear* and *Hamlin & Seawell* for appellant.

(1)   The place where the captain wanted to alight was, by the custom of the company, a regular stopping place. That being true, when he notified the agents of defendant in charge of the car that he desired to alight, and they recognized his notice by slackening the speed, it was their duty to have stopped the car and held it a reasonable time.   And they were guilty of negligence when they accelerated its speed before he had gotten off.   Jones v. Traction Co., 137 Mo. App. 408; Cramer v. Traction Co., 112 Mo. App. 350; Reagan v. Transit Co., 180 Mo. 117; Bell v. Railway, 125 Mo. App. 660; Murphy v. Railway, 125 Mo. App. 269; McKinstry v. Transit

Co., 108 Mo. App. 12; Berry v. Transit Co., 211 Mo. 88; Miller v. Transit Co., 215 Mo. 607; Crace v. Railway, 156 Mo. 300. (2) The rule or custom of stopping cars at any place along the line wherever passengers desired to alight was established, and the presumption is, in the absence of countervailing evidence, that it was in force at the time of the accident. Paquin v. Railway, 90 Mo. App. 118; Pope v. Railway, 99 Mo. 400; Jones v. Traction Co., 137 Mo. App. 414. (3) The defendant need not have been the sole cause of Captain Cooke's death. It is liable, if his death resulted from the injury caused by its negligence concurring with his physical condition. Newcomb v. Railroad, 169 Mo. 409; Brash v. St. Louis, 161 Mo. 433; Bragg v. Railway, 192 Mo. 331; Harrison v. Light Co., 195 Mo. 625.

*Delaney & Delaney* for respondents.

GRAY, J.—This is a suit by plaintiff to recover damages for the death of her husband, who, it is claimed, lost his life on account of the negligence of the defendant.

The defendant, on the 15th day of August, 1903, was operating a street railroad along certain streets in the city of Springfield. On that morning the deceased, who was seventy-three years of age, boarded a car of the defendant to be carried to a point on Commercial street, between Robberson avenue and Jefferson street. The deceased boarded what was known as a summer car, being an open car. The defendant maintained a double track on a part of its line at least, and a rope was stretched along the left side of the car, presumably for the purpose of notifying persons not to get off on that side, although the testimony is not clear on that point.

The evidence shows that at the time of the accident, it was the custom of the defendant to stop its cars at any place passengers desired to board or alight, whether the same was at the street corners or between the streets.

On the sides of the cars were running boards extending the full length thereof, so that persons getting on or off the cars used these boards.

On the date aforesaid, after the car had passed Robberson avenue, the deceased rang the bell, which was the signal that he desired to alight, and in response to his signal, the motorman turned off the current and slackened the speed of the car. About that time and while the car was slowing down in response to the signal, another passenger got off on the right hand side of the car, and the deceased was getting out under the rope, evidently for the purpose to alight on the left side, and then what happened is described by Mrs. Franklin, a witness called by plaintiff, as follows: "I heard the rings of the bell and I turned to look to see who was on the car and I saw this old gentleman in the act of getting off and saw him fall under the car. When I first saw him he was standing on the running board on the north side of the car and had hold of those handholds or handbars whatever you would call them. That was after I heard the bell ring and the car was slowing down to a very slow speed. When the captain was hurt I think he was jerked off or thrown off some way, he was in the act of stepping down and the car started with uncontrollable power some way, it seems as though it gave a sudden jerk to me. I mean by uncontrollable power that it gave a jerk. The car started up at that, as it oughtn't, like they didn't have any control of it. The way I would think, the motorman put on his power, too fast on front, or something like that. I noticed the car gave a jerk, and he fell under the car."

Grant Wilson also testified for the plaintiff, that the deceased gave the signal for the car to stop and the car slowed up and that he got off on the right hand side, and as he did, he saw the deceased getting ready to get off on the left hand side.

A previous suit had been brought and the trial court sustained a demurrer to the evidence, whereupon the

plaintiff took a nonsuit and appealed to the Supreme Court, and the appeal was dismissed on the 23d day of October, 1908, and the present suit was brought within the period allowed by law under such circumstances.

At the conclusion of the testimony, the circuit court sustained a demurrer to the evidence, and plaintiff appealed to this court.

The only question for our consideration is, whether the testimony of the plaintiff was sufficient to carry her case to the jury. The rule is established that it is the duty of the carrier to exercise a high degree of care for the safety of its passengers, and it is equally well settled that to start a car with a sudden jerk while a passenger is in the act of alighting therefrom is a breach of the obligation the carrier owes to the passenger, and is evidence of negligence in an action brought by the passenger or his representative against the carrier. [Miller v. Transit Co., 215 Mo. 607, 114 S. W. 945; Van Cleve v. Railroad, 137 Mo. App. 332, 118 S. W. 116; Canaday v. United Railways Co., 134 Mo. App. 282, 114 S. W. 88; Jones v. Traction Co., 137 Mo. App. 408, 118 S. W. 675.]

In this case the signal to stop had been given and the plaintiff's testimony shows that while the deceased was getting ready to get off the car and just as the car had slowed down for that purpose, the current was suddenly turned on so that the car jerked, and thereby caused the plaintiff's husband to fall to the ground and receive the injuries from which there is some testimony to show that he afterwards died.

The physicians who waited on the deceased, testified that he was old and very feeble, and would not have lived but a short time, even though he had not received the injuries. But there was testimony tending to prove that the injury received shortened his life, and therefore, the question was one for the jury.

The evidence shows that a conductor was on the car and in charge thereof, with the knowledge that persons were in the habit of getting on and off the cars any

time, whether at a street crossing or in the middle of a block. And it is a matter of common knowledge that after a signal has been given to stop the car, passengers do not wait for the car to come to a standstill before getting up and passing out to the platform for the purpose of getting off the car when it stops. And in this case the testimony shows that after the deceased had given the signal, he began to move and to get ready to get off the car, and while he was so doing, and after the car had come almost to a standstill, the same was started suddenly with a jerk and he fell and was injured.

The respondent has filed no brief in this court, but at the argument appeared and called our attention to the fact that much of the testimony relating to the controversy was omitted from the appellant's abstract of the record. We are compelled to accept the abstract on file in this court, and have measured the plaintiff's right to recover by the evidence contained in that abstract, and all we decide is, that, under the evidence contained in the appellant's abstract, the plaintiff's case is one for the jury. We will reverse the judgment and remand the cause. All concur.