Higgins vs. Breen, Adm'r of B. McNally.

ROSALINA HIGGINS vs. PETER BREEN, Adm'r of B. McNally.

1. This was an action of assumpsit brought by Rosalina Higgins against the administrator of McNally's estate, and contained two counts. The first was a special count, averring that the deceased McNally, representing himself to be a widower, had induced the plaintiff to marry him—that she did accordingly marry, and live with him until his death. It alledged that at the time of the marriage, McNally had a wife living, unknown to the plaintiff, and that said wife survived McNally, and is entitled to dower in his estate, "*by which the plaintiff was deprived of her dower.*" Held, that this count was bad.

Where the marriage is void and not merely voidable, the wife is not entitled to dower.

2. The second count was for work and labor generally. Under this count evidence was offered to prove the marriage and other facts contained in the first count; and that plaintiff labored for deceased, and managed his household affairs. Held, that the evidence ought to have been received.

3. The right of action for the work and labor done under this fraud of the deceased, survives against the administrator.

4. Where a verdict is rendered, and no motion to set it aside is made, the supreme court will not interfere.

ERROR to St. Louis Court of Common Pleas.

SCOTT, J., delivered the opinion of the court.

This was an action of assumpsit, brought by the plaintiff in error, Rosalina Higgins, against the administrator of Bernard McNally's estate.

The declaration contained two counts. The first was a special one, setting out at length the facts of the case, and alledging, that B. McNally in his lifetime, representing himself to be a widower, sole and unmarried, solicited the plaintiff to marry him, and as his wife to take charge and control of his family and domestic concerns, in consideration of which she should enjoy all the rights, interests and privileges of a married woman. That the plaintiff afterwards married McNally, and lived and cohabited with him as his wife, took charge of his affairs, and conducted herself as a dutiful wife, until the death of the said McNally. It is furthermore alleged that at the time of the said marriage, the said McNally was married and had a wife living, unknown to the plaintiff, in foreign parts, which said wife survived said McNally, and is entitled to dower in his estate; that McNally left a considerable estate, and by reason of the premises the plaintiff has been, and is debarred of her dower to the damage, &c.

The second count is general, for work and labor, care, diligence and attention to the business and affairs of McNally, the defendant.

To the first count in the declaration there was a demurrer which was sustained by the court below. On the trial of the issue on the second count, the plaintiff offered to prove that the deceased, Bernard McNally, about the month of August, 1841, applied to the plaintiff to marry him, then representing himself as a widower, with two children, and stating that his former wife was dead, and after repeated solicitations the plaintiff consented to marry the said Bernard. On the 23d day of August, 1841, the plaintiff and said Bernard were married. The plaintiff also offered to prove that she lived with said Bernard, as his wife, from the time of their marriage until his death, which occurred on the second day of October, 1842, discharging all the duties of a wife, managing the family and household affairs of said McNally, with prudence and industry ; that said McNally was a farmer, in the possession of a comfortable house, and a farm of about forty acres in cultivation, which he owned, near Manchester, in St. Louis county, with considerable personal property ; that McNally had many laborers in his employment on his farm, and in erecting buildings, and the plaintiff cooked for the whole family, including those laborers. The plaintiff further offered to prove that said Bernard McNally, at the time of making the representations to plaintiff as aforesaid, and at the time of his marriage with the plaintiff as aforesaid, and at the time of the death of the said McNally, had a lawful wife living in foreign parts, who has, since his death, come to the State of Missouri, and claimed and obtained dower in his estate ; and that the plaintiff has been cut off from any interest or share in the estate of said deceased, and that she never received from McNally, in his life time, nor from any person since, any compensation for the services she rendered, more than her food and clothing. The bill of exceptions then states that the court decided that the proof of the foregoing facts would not support the plaintiff's action, and that she was not entitled to recover, and the plaintiff not offering any other evidence, the court instructed the jury to find for the defendant, to which opinions and instructions the plaintiff excepted, and the exceptions were saved. There was a verdict for the defendant. No motion was made to set aside the verdict, and grant a new trial, but the cause is brought here on the exceptions taken before the verdict was given.

At common law, actions *ex constractu* alone survived against an executor or administrator. But where the cause of action arise from any mis-feasance or mal-feasance, was a tort, or arose *ex delicto*, in which the declaration imputes a wrong done to the person or property of an-

other, and in which the plea was not guilty, and damages were covered, then the rule *actio personalis moritur cum persona* prevailed, and no action could be sustained by or against an executor or administrator. The statute of 4th Edward the Third, *de bonis asportatis in vita testatoris*, reciting that in times past executors have not had actions for trespasses done to their testators, as of the goods and chattels of their testator carried away in his life time, and so as such trespasses have remained unpunished, enacts that the executor in such cases shall have an action against the trespassers, and recover their damages in like manner as they, whose executors they be, should have had if they were living. This statute was subsequently extended to executors of executors, and to administrators, and being a remedial statute has been always liberally construed, and although using the word trespasses alone, has been extended to all acts by which personal property has been lessened in value. It has been construed as extending to an action for an escape, to debt on a judgment, suggesting a *devastavit* by the executor, to an action for a false return, for removing goods taken on execution before the landlord was paid a year's rent, and for not setting out tithes. The statute, it will be perceived, only gave actions *to* executors, and not *against* them, for as against the person committing the injury the action dies with him. Chitty 59; 1st Saunders 217. Our statute has changed the English law in this respect, and has given an action both *to* and *against* executors and administrators, and by employing much broader language than the statute of Edward, seems to have included by express enactment the injuries which were comprehended in that statute only by construction. The words of our statute are, "for wrongs done to the property, rights or interests of another," &c., with an exception of actions for slander, libel, assault and battery, or false imprisonment, and to actions on the case for injuries to the person. Rev. Code, title administration, art. 2, sec. 24 and 25.

For the wrong complained of by the plaintiff in her declaration, had a *scienter* been alledged, an action on the case could have been maintained at common law against the wrong doer. Buller 32. There is no room for the doubt expressed by Buller, whether an action for the injury would lie, inasmuch as it was made a felony by statute, and therefore the civil remedy was merged in the crime, for our code expressly declares that in no case shall the right of action of any party injured by the commission of a felony, be deemed or adjudged to be merged in such felony. Rev. Code 215; Nash vs. Prim, 1 Mo. Rep. 125; Mann vs Trabue, ib. 508.

Our statute giving an action in all cases *against* an executor or administrator, where, by the English law, it is given only to the executor or administrator, it will be perceived at once that many actions which by the English law, die with the person committing the injury, will under our law survive against his executor or administrator; and therfore the principle of the common law that where the plea must be, that the testator or intestate was not guilty, no action can lie against the executor or administrator, does not obtain in our jurisprudence.

It may be objected that notwithstanding the language of our statute is broader than that of Edward III, and although the common law rule, defining what actions survived, and what did not, is broken down, yet actions for injuries to the person are expressly excepted in our law, and deceits are classed among wrongs to the person. 1 Sanders 217, in the matter of Sir Henry Sherrington, Justice Manwood said, in every instance where any price or value is set upon the thing on which the offence is committed, if the defendant die, his executor shall be chargable; but when the action is for damages only, in satisfaction of the injury done, then his executor shall not be liable. Lord Mansfield, in the case of Hambly vs. Trott, 1st Cowper 376, in delivering the opinion of the court, after citing the words above mentioned of Justice Manwood, remarks : " Here is a fundemental distinction. If it is a sort of injury by which the offender acquires no gain to himself, at the expense of the sufferer, as beating or imprisoning a man, then the person injured has only a reparation for the *delictum* in damages to be assessed by a jury. But, where besides the crime, property is acquired, which benefits the testator, then an action for the value of the property shall survive against the executor. So far as the tort goes, an executor shall not be liable; and therefore it is, that all public and all private crimes die with the offender, and the executor is not chargeable, *but as far as the act of the defendant is beneficial to him,* his assets ought to be answerable, and his executor therefore shall be charged. In another part of the same case, the judge declares that if a man receives the property of another, his fortune ought to answer it. Suppose he dies, are his assets to be in no respects liable? It will require a good deal of consideration before we decide that there is no remedy. He further maintains that *where there is gain or acquisition of the testator, by the work and labor,* or property, an action will survive against his representative."

This view of the question, taken from the case above referred to, which was twice argued, and unanimously concurred in by the court of

King's Bench, after great deliberation, commends itself by its precision and clearness, and finds a hearty concurrence in the sense of justice of every impartial mind.

' If the injury of McNally was a mere tort, which resulted in no benefit to himself, then according to the case above cited, the action would not survive; but if it can be shewn that the injury resulted in an advantage to him, that he was made richer, or his circumstances improved by the work and labor of the unfortunate plaintiff, then this action will lie. It is not maintained that for the deceit practised, for the injury to her person, the plaintiff has any redress against the administrator, or that she is entitled to any *premium pudicitiæ*, she is only allowed the value of her work and labor, which were performed under such circumstances, as the law will imply a promise to pay for them; and as if the action had been brought against the defendant himself, he would not have been permitted to give evidence of his having committed a wrong in order to defeat it, so such a defence will not be allowed to his administrator.

Whether the services of the plaintiff were valuable, whether the defendant's wealth was augmented by her assistance, or whether she was a burden, are not questions for this court; their determination belongs to a jury; it is enough for us that the case in the attitude in which it is brought here, assumes that her services were valuable.

We are of the opinion that the demurrer to the first count of the declaration was properly sustained. No authority has been produced in which a *feme sole*, under the circumstances of this case, has recovered the value of her dower in the estate of her wrong doer. Had it been allowed, such recoveries must have been frequent, as divorces have often been granted to women for cause which render the marriage null and void, *ab initio*. But dower does not attach, by virtue of any contract, express or implied, made by the husband to the wife; it is a consequence of marriage, and is a provision made by law for the sustenance of the widow, and the nurture and education of her children.

There must be a marriage before dower can attach, and where the marriage is void, and not merely voidable, there can be no dower.

A point has been made touching the manner in which the errors complained of, are brought before the court, and whether the judgment must not be affirmed, although an the merits, the cause is for the plaintiff? However painful such a course must be to the court, yet its rules of practice, long established, cannot be overturned or departed from, unless a conviction arises that they are unjust or improper. It has been settled for many years, that when there is a judgment on a verdict, and

32

no motion is made to set aside the verdict and grant a new trial in the court below, this court will not disturb the judgment of the inferior court, for errors committed in the progress of a trial, although they were excepted to, unless a motion is afterwards made to set aside the verdict for those errors, and the motion is overruled. This rule, although harsh in its application in particular cases, and somewhat so in he present, is founded in good policy, and on solid reasons, and we do not feel ourselves at liberty to depart from it. Montgomery vs. Farrar, 2 Mo. R. 189.

Judgment affirmed.

NAPTON, J., I do not concur in the affirmance of this judgment. I have not been able to find any authority which requires a point of law to be twice decided by the circuit court, in order to authorize this court to review that decision. The case of Montgomery vs. Farrar was a case in which this court refused to reverse the judgment of the circuit court, because of the insufficiency of the evidence, on the ground that there was no motion for a new trial. Whether the erroneous charge will avail the party excepting in this court, is another question. Undoubtedly unless the party complaining has preserved the evidence to show the practical effect of the instruction, it cannot be determined whether he has sustained any injury by the decision. In this case no question of this character arises. The instruction given by the court was in the nature of a demurrer to the evidence, and as the instruction was excepted to, and the whole evidence preserved, I am unable to see the necessity of a motion for a new trial, by the refusal of which the circuit court would only have decided the same question a second time.