GEORGE G. GILKESON, Administrator of Estate of
CLIFFORD RAGEL, v. MISSOURI PACIFIC
RAILWAY COMPANY, Appellant.

**Division One, July 1, 1909.**

1. **NEGLIGENCE: Death: Right of Administrator of Deceased
   Child to Sue.** The administrator of the deceased minor child
   of the parents who perished in a common railway collision,
   due to defendant's negligence, cannot, under the Damage Act
   as it existed prior to 1905, maintain a suit for the statutory
   damages fixed by the statute. Neither at common law nor
   under that statute did an action survive to the administrator
   of the child who survived the deceased parent. So that
   where Ragel and his wife were simultaneously killed by a col-
   lision between trains on October 10, 1904, and a minor child
   survived four days, the administrator of such minor cannot
   maintain suit for the wrongful death of Ragel and his wife.

2. ——: ——: **Under the Administration Act.** Under the
   administration Act (Secs. 96 and 97, R. S. 1899) the adminis-
   trator cannot maintain a suit for damages for personal injuries
   resulting in the death of his intestate. Those sections in
   permitting an action to be brought by the administrator of
   "the person injured" for "all wrongs done to property, rights
   or interest of" such injured person, refer to wrongs done to
   property rights and interests only.

3. ——: ——: **Support, Etc.: Abatement.** Upon the death
   of the minor his right to recover from the wrongdoer for
   the wrongful killing of his parents, abates. The minor's ad-
   ministrator cannot maintain an action on the theory that the
   minor was entitled to the support, care and maintenance by
   his parents, and was wrongfully deprived of these rights by
   the defendant's tort. Depriving the minor of the care and
   support due him from his parents is not an injury to his
   property rights, but to his personal or domestic rights.

4. ——: ——: ——: **Pecuniary Loss.** The sum of $5,000,
   which a wife or children of a person killed by the wrongful
   act of another may recover under Sec. 2864, R. S. 1899, is
   not compensation for a pecuniary loss. The one, or the others,
   may recover that sum whether or not either have sustained
   any pecuniary loss at all.

5. ———: **Construction of Statutes.** Even if Secs. 96 and 97, R. S. 1899, were broad enough to permit the administrator of the deceased minor to sue for the wrongful death of the minor's parents, no such right is given by Sec. 2864, R. S. 1899, which is a later statute and one relating to a particular kind of wrongs, namely, injuries arising from negligence, while Secs. 96 and 97 are general and relate to all wrongs, and Sec. 2864 would therefore be an exception to Secs. 96 and 97, and under Sec. 2864 the administrator cannot maintain an action.

Appeal from Johnson Circuit Court.—*Hon. N. M. Bradley*, Judge.

REVERSED.

*Martin L. Clardy* with *R. T. Railey & Son* for appellant.

The principal question involved in this case is whether or not an administrator, in the first instance and before judgment, can maintain an action, in a death case for $5,000, under section 2864, as said section stood on October 10, 1904, the day of the Ragels' death. (1) A personal right of action dies with the person. Broom's Legal Maxims (4 London Ed.), p. 667; Mobile Life Ins. Co. v. Brame, 95 U. S. 754; McNamara v. Slavens, 76 Mo. 330; Town of Carrollton v. Rhomberg, 78 Mo. 549; Gibbs v. Hannibal, 82 Mo. 143; Vawter v. Railroad, 84 Mo. 683; Barker v. Railroad, 91 Mo. 91; McIntosh v. Railroad, 103 Mo. 133; Hennessy v. Brewing Co., 145 Mo. 12; Brink v. Railroad, 160 Mo. 91; McGinnis v. M. C. & F. Co., 174 Mo. 229; Packard v. Railroad, 181 Mo. 426; Strode v. Railroad, 197 Mo. 626; Bates v. Sylvester, 205 Mo. 493; Casey v. Railroad, 205 Mo. 724; Elliott v. Railroad, 210 Mo. 576; Strattman v. Railroad, 211 Mo. 227; Broadwater v. Railroad, 212 Mo. 437; Crohn v. Tel. Co., 131 Mo. App. 313; Hegerich v. Keddie, 99 N. Y. 258; Earnest v. Railroad, 112 S. W. 141; Millar v. Railroad, 115 S. W. 521. The common law, of course,

was in full force and effect in this State in October, 1904, except as modified or changed by national or State law. Sec. 4151, R. S. 1899. It is, therefore, too plain for argument, on the admitted facts, that plaintiff has no standing in court as a common law cause of action. (2) We insist that not a single case can be found in our reports, which has ever held that an administrator, in a death case like this, could recover damages under the law as it stood in October, 1904. On the other hand, this court, at an early date, conclusively settled this question adversely to the contention of respondent. Gibbs v. Hannibal, 82 Mo. 143; Broadwater v. Railroad, 212 Mo. 437; Strottman v. Railroad, 211 Mo. 227; Crohn v. Tel. Co., 131 Mo. App. 313. (3) "At common law actions in tort do not survive the death of either the wronged or the wrongdoer." Bates v. Sylvester, 205 Mo. 496. This court, in no uncertain language, in a number of recent cases has emphasized this proposition of law. Millar v. Railroad, 115 S. W. 521; Broadwater v. Railroad, 212 Mo. 437; Strottman v. Railroad, 211 Mo. 227.

*Jackson & Noble* and *Chas. E. Morrow* for respondent.

(1) All civil actions survive except injuries to person and reputation. R. S. 1899, secs. 96-97; Kingsbury v. Lane, 21 Mo. 117; McDermott v. Doyle, 17 Mo. 336; Stanley v. Bercher, 78 Mo. 245; Phillips v. Towler, Admr., 23 Mo. 401. The penal statutory cause of action given by Sec. 1105, R. S. 1899, survives under our statute. Snyder v. Railroad, 86 Mo. 613. The penalty given by statute for failure to satisfy a mortgage has also been held to survive. Wiener v. Peacock, 31 Mo. App. 238. The statutory action given against the owner for injury done by a slave to person or property survived. Phillips v. Towler's Admr., 23 Mo. 401. (2) The right of action given by statute

to a child to sue and recover money for the death of its father and mother, a pecuniary loss for which the common law gave no remedy, is a property right under all the definitions of property. It vested in the child on the death of its parents and survives under the statute. This is true whether the right be considered a transmitted right or a new cause of action. It is a right given by law to recover for a loss recognized by law. R. S. 1899, secs. 96-97; Behen v. Railroad, 186 Mo. 430; Meekin v. Railroad, 164 N. Y. 145; Contryman v. Railroad, 166 N. Y. 201; Cooper v. Electric Co., 63 N. J. L. 558; Pitkin v. Railroad, 87 N. Y. Supp. 906; Caspo v. City of Syracuse, 90 N. Y. Supp. 553; Quinn v. Moore, 15 N. Y. 432; Yertore v. Wiswall, 16 How. Pr. (N. Y.) 8; People ex rel. v. Gill, 85 App. Div. (N. Y.) 195. Whether the right is original or transmitted, it survives both under the statute and at common law. James v. Christy, 18 Mo. 162; Twycross v. Grant, 4 C. P. D. 45; Bradshaw v. Railroad, 10 C. P. 189; Phillips v. Towler's Admr., 23 Mo. 401. When the third section of the Damage Act was passed, giving a remedy to a child in an action for damages for the necessary injury resulting from the death of a parent, the courts immediately recognized all these elements as pecuniary loss. Stoher v. Railroad, 91 Mo. 518; McPherson v. Railroad, 97 Mo. 253. A vested right of action is property. A right to sue and recover money is a property right. Cody v. Dempsey, 83 N. Y. Supp. 899; Power v. Horton, 57 Mich. 107; Ballsthill v. Humphrey, 64 Mich. 494. (3) Our damage statute is taken from Lord Campbell's Act and creates a new cause of action. It is not a survival statute. Nor does it transmit a right from the deceased to the beneficiary. Behen v. Railroad, 186 Mo. 430; Meekin v. Railroad, 164 N. Y. 145; Martin v. Railroad, 151 U. S. 695; Hulbert v. Topeka, 34 Fed. 510; Byron v. Railroad, 102 Wis. 137; Railroad v. Barron, 72 U. S. 90; 3 Suth. on Dam., p. 282. All

the States as well as the U. S. Supreme Court and the courts of England so hold. Smith v. Railroad, 75 Ala. 449; Munro v. Dredging Co., 84 Cal. 515; Magon v. Railroad, 95 Cal. 510; Davis v. Railroad, 53 Ark. 517; Holton v. Doley, 106 Ill. 131; Quincy Coal Co. v. Hood, 77 Ill. 68; Railroad v. Hosea, 152 Ind. 412; Burnes v. Railroad, 113 Ind. 169; Railroad v. Goody-koontz, 119 Ind. 111; Martin v. Railroad, 58 Kan. 475; Eureka v. Merrifield, 53 Kan. 794; Cooper v. Elec. Co., 63 N. J. L. 558; Meekin v. Railroad, 164 N. Y. 145; Perham v. Portland Gen. Electric Co., 33 Ore. 451; Fink v. Gorman, 40 Pa. St. 95; Re Estate of Mayo, 60 S. C. 401; Mason v. Railroad, 7 Utah 77; Needham v. Railroad, 38 Vt. 294; Brown v. Railroad, 102 Wis. 137; Curry v. Marmington, 23 W. Va. 14; Cunningham v. Sager, 21 W. Va. 440; Martin v. Railroad, 151 U. S. 695; Hulbert v. City of Topeka, 34 Fed. 510; Railroad v. Adams, 116 Fed. 324; Seward v. The Vera Cruz, 10 App. Cas. 59; Brunsden v. Humphrey, L. R. 14 Q. B. D. 141.

WOODSON, J.—This suit was brought in the circuit court of Johnson county, by the administrator of the estate of Joseph A. and Clifford Ragel, deceased, against the defendant, to recover the sum of $10,000 for each, for the wrongful killing of their father and mother, Philip and Rose E. Ragel, on October 10, 1904, by a negligent head-end collision of two of its passenger trains, near Warrensburg, Missouri.

The petition was in three counts, and in the court below the plaintiff dismissed the case as to each count as administrator of the estate of Joseph A. Ragel; and elected to proceed upon the first and second counts, as administrator of the estate of Clifford Ragel, and also dismissed the cause stated in the third count of the petition.

The first count of the petition states that said Gilkeson is the duly qualified administrator of the estate of Clifford Ragel, an unmarried minor, of the age of fourteen years; that he was a child of Philip and Rose Emma Ragel, deceased, and that he and his brother Joseph A. Ragel, deceased, an unmarried brother, of the age of 20 years, were the only minor children and heirs at law of said parents; that said Philip and Rose Emma Ragel were both killed on the 10th of October, 1904, on the same day and at the same time in a collision, without having sued defendant or any one for damages for his death, and that since her death her personal representative has not brought suit for damages for his death against any one. That defendant was a corporation duly organized under the laws of Missouri and was operating a line of railway through the counties of Cowley, Chautauqua, Montgomery, Labetta and other counties in the State of Kansas to and through Johnson county to St. Louis, Missouri, and was at said dates a common carrier of passengers and freight. That on the ——— day of October, 1904, said Philip Ragel, the father of said minors, purchased from defendant, at Edna, Kansas, a ticket which entitled him to ride on defendant's train from there to St. Louis, Missouri, as a passenger; that he paid to said defendant the regular passenger fare from Edna to St. Louis, Missouri, and took passage on defendant's train as such passenger on said date, to St. Louis; that while he was a passenger on defendant's train aforesaid, on October 10, 1904, about one and one-half miles east of Warrensburg, in Johnson county, Missouri, through the negligence of defendant, the train on which said Philip Ragel was riding, collided with another train on said road, traveling in the opposite direction, thereby wrecking said Ragel's train and killing him; that his said death was caused solely by the negligence of defendant as aforesaid, to the damage of said Clifford Ragel in the sum

of five thousand dollars. That said minors survived said Philip Ragel, and this plaintiff has been duly appointed administrator of their estate as aforesaid. Wherefore he prays judgment for $5,000 and costs.

The second count of the petition after the dismissals aforesaid is in substance the same as count one, supra, except that plaintiff asked judgment in the second count for $5,000, as administrator of the estate of Clifford Ragel, deceased, by reason of the damages which it is claimed he sustained on account of the death of said Rose Emma Ragel.

The answer contains a general denial as to each of the above counts of petition.

A trial was had upon the following agreed statement of facts:

."It is agreed by the parties to this cause that the facts herein are as follows:

"1st. The plaintiff Gilkeson is the administrator of the estates of Clifford Ragel and Joseph A. Ragel, deceased, having been duly appointed as such by the probate court of Pettis and Johnson counties, Missouri, respectively, in which counties said deceased died.

"2nd. Clifford Ragel died in Pettis county, Missouri, on the 14th day of October, 1904, age fourteen years, unmarried, having been injured in the wreck hereinafter described, and dying of said injuries. Joseph A. Ragel died on the 10th day of October, 1904, in Johnson county, Missouri, age twenty years, unmarried, having been killed with his father and mother in the collision hereinafter referred to. Susan Cooper, wife of Joseph Cooper, also a daughter of Philip Ragel and Rose Emma Ragel, twenty-three years of age, was also killed in the same wreck and at the same time, with her said father and mother. Clifford Ragel and Joseph A. Ragel were the only minor children of Philip Ragel and Rose Emma Ragel, deceased. The said Clifford Ragel survived his said mother and

father four days, from October 10th to October 14, 1904, and said Joseph A. Ragel did not survive either of them, but was killed at the same time they were killed.

"3rd.    Philip Ragel and Rose Emma Ragel, his wife, father and mother of Clifford Ragel and Joseph A. Ragel, purchased tickets from defendant at Edna, Kansas, entitling them to passage on defendant's passenger trains from that point to St. Louis, and were passengers on one of defendant's passenger trains on its railroad on the morning of October 10, 1904, going eastward, when at a point about one and one-half miles east of Warrensburg, Missouri, in Johnson county, by reason of the negligence of the defendant, its agents, servants and employees, whilst running, conducting and managing defendant's locomotives and trains of cars, the train on which the said Philip Ragel and Rose Emma Ragel were traveling as passengers, collided with another train of the defendant, operated by defendant, its agents, servants and employees, going westward on the same track, while both of said trains were running at a high rate of speed, and said trains ran into each other, causing a head-end collision and wreck, demolishing the car in which said Philip Ragel and Rose Emma Ragel were riding, thereby killing said Philip Ragel and Rose Emma Ragel, on the said 10th day of October, 1904.

"4th.    Neither Philip Ragel or Rose Emma Ragel nor anyone representing them has brought suit against anyone for the death of either, nor has anyone so brought suit for the said Susan Cooper for the death of either.

"5th.    Philip Ragel and Rose Emma Ragel, deceased, left surviving them as their only minor child, said Clifford Ragel.

"6th.    The petition of this cause was filed on the 7th day of October, 1905, and summons was issued the

same day and duly served on defendant on the 7th of October, 1905."

In addition to the agreed statement of facts, it is further agreed between counsel for plaintiff and defendant that Clifford Ragel, Joseph A. Ragel and Susan Cooper, mentioned in said agreed statement of facts, were the only children of Philip and Rose Emma Ragel.

Counsel for defendant objected to the introduction in evidence of the agreed statement of facts, for the reason that the petition did not state facts sufficient to constitute a cause of action against the defendant, which was by the court overruled. To which ruling of the court, the defendant duly excepted.

Thereupon the court found for the plaintiff in each count of the petition for the sum of $5,000, and judgment was rendered therein accordingly. After taking the proper preliminary steps for that purpose, the defendant appealed the cause to this court.

I. Counsel for appellant insists that the petition does not state facts sufficient to constitute a cause of action against it, and for that reason the court erred in overruling their objection to the introduction of any testimony. That ruling of the trial court is here presented for review.

The specific objection urged against each count of the petition is, that neither of them states a cause of action, for the reason that an administrator, under section 2864, Revised Statutes 1899, as it existed at the date of this injury, could not maintain an action for damages in a death case based upon personal injuries.

That precise question came before this court in the case of Gibbs v. City of Hannibal, 82 Mo. 143. In that case George L. Crosby, while driving with his wife and two infant children in a vehicle, crossing a bridge over a stream in the city of Hannibal, was precipitated into the stream by the fall of the bridge, al-

leged to have been caused by the negligence of the city. By reason of the casualty all of them perished. It was alleged that Mrs. Crosby survived her husband and two children, and that while so surviving a cause of action accrued to her for the death of each of them. The plaintiff therein was appointed the administrator· of her estate, and on December 24, 1877, he instituted that suit in the Hannibal Court of Common Pleas. The petition consisted of three counts; the first asking five thousand dollars for the death of her husband, and five thousand for the death of each of her two children. To that petition a general demurrer was filed, which was sustained. On appeal, this court in discussing the propriety of that ruling used this language: "The petition, we take it by any fair construction, is based upon sections 2121, 2122 and 2123 of the revision of 1879, or, as it is popularly called, the Damage Act. The two leading questions presented by the demurrer are, first: The right of the plaintiff to maintain the action; second, the right in this action to recover for damages to property alleged to have been occasioned by the falling of the bridge, and the death of the husband consequent thereon. In the case of Proctor v. H. & St. J. R. R. Co., 64 Mo. l. c. 119, 120, this court speaking of sections 2, 3 and 4 as then numbered in the Damage Act, 1 Wag. Stat., pp. 519, 520, and, which correspond with sections 2121, 2122 and 2123 of the revision of 1879, uses this language: 'It is conceded by all that the third section of the act 'was only designed to transmit a right of action, which but for the section would have ceased to exist, or would have died with the person; in other words, that under section three whenever a person dies from such wrongful act of another as would have entitled the person to sue had he lived, such cause of action may be maintained by certain representatives of the deceased, notwithstanding the death of the party receiving the injury. It creates no new cause of action, but simply contin-

ues or transmits the right to sue which the party whose
death is occasioned would have had had he lived. It
is not only a right transmitted, but it is restricted by
limitations as to the persons who are to enjoy the
right, the time within which it is to be enjoyed, and
the amount of damages to be recovered. Section 4
provides that all damages accruing under section 3
shall be recovered by the same parties and in the same
manner as is provided in section 2, and in every such
action the jury may give damages not exceeding $5,-
000. This section in connection with section 2 desig-
nates the parties to whom this right is transmitted,
and also the time within which it is to be exercised.'
In McNamara v. Slavens, 76 Mo. l. c. 330, 331, this court
treating of the same subject uses this language:
'Neither the husband nor wife, nor children, had, at
common law, an action for the death of the husband,
or wife, or parent, under the circumstances mentioned
in sections 2121, 2122. It is a cause of action created
by the statute, and no one can sue unless he bring him-
self within its terms.' Section 2123 provides that all
damages accruing under section 2122 shall be sued for
and recovered by the parties named in section 2121,
that is, first, by the husband or wife of the deceased;
or second, if there be no husband or wife, or he or she
fails to sue within six months after such death, then
by the minor child or children of the deceased; or,
third, if such deceased be a minor and unmarried, then
by the father and mother, who may join in the suit,
and each shall have an equal interest in the judgment,
or if either of them be dead then by the survivor.
These are the only beneficiaries who can maintain
such an action. If in any case there be no such per-
son, no suit can be brought by any other person. By
the statute the action survives only to the parties nam-
ed. They alone are the beneficiaries of the statute and
it was never intended that such action would survive

to the executor or administrator of anyone of the beneficiaries named. It is a right personal to the beneficiary, and does not survive to his personal representatives. In the case at bar all the beneficiaries within the purview of the statute perished together in one common disaster and there was no person left to whom the action could survive. It follows that this action cannot be maintained by the present plaintiff who is the administrator of the wife. Under the statute he has no standing in the court.''

Section 2121, Revised Statutes 1879, under consideration in that case, outside of certain amendments made in 1885 which do not relate to the question now under discussion, reads exactly as did section 2864, Revised Statutes 1899, on October 10, 1904, when this casualty occurred. By an inspection of the record in that case it will be seen that the accident mentioned therein occurred on June 27, 1877, which was prior to the revision of 1879, while section 601 of General Statutes 1865 was in force, which was the same as said section 2121, Revised Statutes 1879, referred to in that opinion, which has been brought down through all of the subsequent revisions without amendment, except as mentioned in 1885. So it appears that neither the intermediate sessions nor any of the revising sessions of the Legislature prior to 1905 have ever at any time amended the law so as to allow an administrator to sue in cases of this character, notwithstanding this court had years before held he could not do so. By an Act of 1905, the Legislature for the first time attempted to confer the right to sue in cases like this upon executors and administrators (Laws 1905, pp. 135 and 136), thereby recognizing the fact that they had no such authority prior thereto, as was held by this court in the case of Gibbs v. Hannibal, supra.

In brief, that case was based upon the theory that at common law a civil action would not lie for an injury resulting in death, for, under that law, the cause of ac--

tion did not survive the injured party but died with him; and that being true, there was no cause of action to be transmitted to any one on which an action could be maintained; and while under said section 2121 the cause of action survived the injured party, yet it was transmitted only to those who were authorized thereby to sue for the recovery of the damages, none of whom, however, was the executor or administrator of the estate of the beneficiary under the statute. [Bates v. Sylvester, 205 Mo. 493; Proctor v. H. & St. J. R. R. Co., 64 Mo. 112; Connor v. Chicago, R. I. & Pac. Ry. Co., 59 Mo. 285; Broadwater v. Railroad, 212 Mo. 437; Strottman v. Ry. Co., 211 Mo. 227; Crohn v. K. C. H. Tel. Co., 131 Mo. App. 313.]

In holding no cause of action lies for an injury which resulted in death at common law, the Supreme Court of the United States in the case of Mobile Life Insurance Co. v. Brame, 95 U. S. 754, said: "The authorities are so numerous and so uniform to the proposition that, by the common law, no civil action lies for an injury which results in death, that it is impossible to speak of it as a proposition open to question. It has been decided in many cases in the English courts and in many of the State courts, and no deliberate, well considered decision to the contrary is to be found."

The Missouri decisions are in full accord with the foregoing. [McNamara v. Slavens, 76 Mo. 1. c. 330; Town of Carrollton v. Rhomberg, 78 Mo. 547; Gibbs, Admr., v. City of Hannibal, 82 Mo. 143; Vawter v. Railroad, 84 Mo. 1. c. 683; Barker v. Railroad, 91 Mo. 86 et seq.; Davis v. Morgan, 97 Mo. 79; McIntosh v. Railroad, 103 Mo. 1. c. 133; Hennessy v. Bavarian Brewing Co., 145 Mo. 1. c. 112; Brink v. Railroad, 160 Mo. 1. c. 91-2; McGinnis v. M. C. & F. Co., 174 Mo. 1. c. 229-230; Packard v. Railroad, 181 Mo. 1. c. 426-7; Strode v. Railroad, 197 Mo. 1. c. 626-7; Bates v. Sylvester, 205 Mo. 493; Casey v. Railroad, 205 Mo. 1. c.

724; Elliott v. Kansas City, 210 Mo. 576; Strottman v. Railroad, 211 Mo. 227; Broadwater v. Railroad, 212 Mo. 437; Crohn v. K. C. H. Tel. Co., 131 Mo. App. 313; Hegerich v. Keddie, 99 N. Y. 258; Earnest v. Railroad, 112 S. W. (Ark.) 141; Millar v. Railroad, 215 Mo. 607.]

II. Having seen that respondent has no standing in court under the common law, nor under section 2864, Revised Statutes 1899, as it read on October 10, 1904, the date upon which Clifford Ragel was injured, it only remains for us to consider the last insistence of counsel for respondent, and that is, is his administrator entitled to maintain this action under sections 96 and 97, Revised Statutes 1899? Those sections read as follows:

"Sec. 96. For all wrongs done to property, rights or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrong-doer, and, after his death, against his executor or administrator, in the same manner and with like effect, in all respects, as actions founded upon contract.

"Sec. 97. The preceding section shall not extend to actions for slander, libel, assault and battery or false imprisonment, nor to actions on the case for injuries to the person of the plaintiff, or to the person of the testator or intestate of any executor or administrator."

This contention of respondent is untenable for the reason that those sections were intended to provide for the survivor by and against personal representatives of actions for wrongs to property rights and interests only, and not for actions based upon the death of a human being. This was expressly held by this court in the case of Bates v. Sylvester, 205 Mo.

493, and on pages 496 to 499, Judge GANTT, in discussing this question, used this language:

"At common law actions in tort do not survive the death of either the wronged or wrong-doer. This rule of the common law forbidding the survivor of actions, or right of action *ex delicto*, was first modified in this State in 1835, by the enactment of what is now sections 96 and 97, Revised Statutes 1899. [Then follows a copy of the sections of the statute before set forth.]

"In Higgins v. Breen, 9 Mo. 497, it was pointed out by Judge SCOTT that the Statute of 4th Edward III. 'only gave actions to executors, and not against them, for as against the person committing the injury the action dies within him.' [Chitty 59; 1 Saunders, 217.] Our statute has changed the English law in this respect, and has given an action both to and against executors and administrators, and by employing much broader language than the statute of Edward seems to have included by express enactment the injuries which were comprehended in that statute only by construction. The words of our statute are, 'for wrongs done to the property, rights or interests of another,' etc., with the exception of actions for slander, libel, assault and battery, or false imprisonment, and to actions on the case for injuries to the person. [R. S. 1835, Title Administration, art. 2, secs. 24 and 25.]

"Sections 96 and 97 have been construed by this court. Thus in Vawter v. Railroad, 84 Mo. l. c. 685, 686, Judge BLACK, speaking for this court, said: 'An administrator appointed in this State receives his power and authority to sue from the laws of this State, and from this State alone, to which he is amenable throughout the entire course of the administration. There is no statute of this State by which he has or can have anything to do with suits of this character or the damages when recovered. He may, by section 96, Revised Statutes 1879, bring an action for all wrongs done to property rights or interests of the deceased

against the wrong-doer. Section 97 provides: "The preceding section shall not extend to actions . . . on the case for injuries . . . to the person of the testator or intestate of any executor or administrator." For fear that section 96 might be construed to confer upon the administrator a right to sue for injuries to the person of the intestate, the next, as will be seen, declares in express terms that he shall not do so. To sustain this action we must say he may maintain such actions, and that, too, because of a statute of another State. . . . This we cannot do.'

"The learned counsel for plaintiff insist that any action sounding in tort which does not expressly fall within the limitations of section 97 can be revived by or against the representatives of a deceased party to the action, and as section 97 only bars actions on the case for injuries to the person of the plaintiff, the only question before this court in this case is whether or not this is an action for injuries for the person of the plaintiff, and as this is not an action for injury to the person of Mrs. Bates, her cause of action survives against the administrator of the alleged wrong-doer, James H. Sylvester. We are unable to concur in this deduction of the counsel for plaintiff, for the reason that at common law the rule was just the other way, that is to say, actions for tort do not survive, and under section 97 actions for tort do not survive unless they are within the terms of section 96. And if by virtue of the general provisions of said section an action might be said to survive, nevertheless if included within the prohibition of section 97, it will not survive. By reference to section 96, it will be noted that the statute refers to 'wrong done to property, rights or interests of another,' and counsel for plaintiff cite us to James v. Christy, 18 Mo. 162. That was an action by the administrator of James for the negligent killing of his son by the explosion of a steam ferry boat on which his son was a passenger. The son was

living with his father and was fifteen years old. The question was whether the action survived to the administrator of the father, and it was held by this court that the father had a property-right in the service of his son during his minority and whilst he was under his guardianship, and if by the misconduct of another he was deprived of those services, or the son's ability of performing them, the law awarded him a compensation in damages. And it was pointed out by Judge Scott that the damages in such case must be limited to the actual value of those services and that all other damages die with the father. In other words, the language of section 96, to-wit, 'property, rights or interest,' means and should be read 'property rights or interest,' and this was the construction placed upon it by this court in Vawter v. Railroad, 84 Mo. 686. At common law the death of a human being gave rise to no civil action in behalf of any person under any circumstances, as has often been decided by the appellate courts of this State. [McNamara v. Slavens, 76 Mo. l. c. 331; Barker v. Railroad, 91 Mo. l. c. 91; Brink v. Railroad, 160 Mo. l. c. 92; Stoeckman v. Railroad, 15 Mo. App. l. c. 507.]"

Then follows a review of cases from other States announcing the same conclusion reached by him. To the same effect are Millar v. Ry. Co., 215 Mo. 607; Strottman v. Ry. Co., 211 Mo. 227; Broadwater v. Wabash Ry. Co., 212 Mo. 437.

So exhaustive and logical are those observations of Judge Gantt they leave nothing we could add upon that subject without being accused of repetition. In fact, if we correctly understand the contention of counsel for respondent in that regard, they do not seriously question the soundness of the position taken by Judge Gantt in that case, but seek to escape the conclusions reached by him therein by contending that the cause of action given to minor children for the wrongful death of their parents is not a transmission

to them of the cause of action which their injured
father or mother would have had had he or she sur-
vived the injury, but is a new cause of action given
to them in the first instance, because of the wrongful
taking from them their rights to the care, support and
maintenance their parents owed them under the laws
of the State; and that such rights are property rights
within the meaning of said sections 96 and 97. In
support of that contention said counsel cite and rely
upon the following authorities: Behen v. Railroad,
186 Mo. 430; Meekin v. Railroad, 164 N. Y. 145;
Countryman v. Railroad, 166 N. Y. 201; Cooper v.
Shore Electric Co., 63 N. J. L. 558; Pitkin v. Railroad,
87 N. Y. Supp. 906; Crapo v. City of Syracuse, 90
N. Y. Supp. 553; Quinn v. Moore, 15 N. Y. 432;
Yertore v. Wiswall, 16 How. Pr. (N. Y.) 8; People ex
rel. v. Gill, 85 A. D. (N. Y.) l. c. 195.

In the consideration of this question, Judge VAL-
LIANT in the case of Behen v. Transit Co., 186 Mo. l. c.
445-448, said:

"But now we have not an action for injuries to
the plaintiff's person, nor an action to recover for
the mental and physical suffering of his mother, but
the action for compensation for what he lost by his
mother's death. The action arises not under the com-
mon law, but under our statute, section 2864, Revised
Statutes 1899, which is mainly copied from the Eng-
lish statute, 9 and 10 Vic., ch. 93, commonly called
'Lord Campbell's Act.'

"In Seward v. Vera Cruz, 10 L. R. (App. Cas.)
59, the question was, did the Court of Admiralty under
the statute, which gave it 'jurisdiction over any claim
for damages done by any ship,' have jurisdiction of a
claim arising under Lord Campbell's Act, and it was
held by the House of Lords that it had not. The
language of the opinions in that case has especial ref-
erence to the law governing proceedings *in rem,* in
admiralty, but the nature of the action given in Lord

Campbell's Act is discussed in that connection, and it was held that that act created a new action and did not merely remove a restriction from the action given by the common law. It is there said, l. c. 67: 'Lord Campbell's Act gives a new cause of action clearly, and does not merely remove the operation of the maxim, *actio personalis moritur cum persona,* because the action is given in substance not to the person representing in point of estate the deceased man, who would naturally represent him as to all his own rights of action which could survive, but to his wife and children, no doubt suing in point of form in the name of his executor.'

"In 4 Sutherland on Damages (3 Ed.), sec. 1260, the author, discussing statutes modeled after the English statute, says: 'The death of a person entitled to sue pending the suit neither abates the action in the common law sense, nor is the cause of action to be compensated for, discharged; but in such a case the damages which may be recovered will be limited in duration to the extent of the lifetime of such person.' In support of the text, the author cites Cooper v. Shore Electric Co., 63 N. J. L. 558, and Meekin v. Railroad, 164 N. Y. 145, both of which sustain the text.

"The New Jersey court, in the case above cited, said, l. c. 565-6: 'If the death of the beneficiary before the end of the litigation discharges the liability of the wrong-doer, the legislative purpose that the wrong-doer should make compensation to the beneficiary for the pecuniary injury sustained by him would be defeated. Such a construction would be contrary to the policy of this legislation and would thrust into the administration of a statutory proceeding, which our courts have declared should be beneficially construed, a technical rule of the common law of harsh injustice. The death of the beneficiary pending suit will have a controlling influence over the quantum of recovery. The personal injury sustained would be

limited in duration and extent of his lifetime. But the death of the beneficiary pending suit cannot be made available or abrogate the liability of the wrong-doer incurred for the pecuniary injury already sustained. The right to compensation vested in the beneficiary immediately upon the death of the deceased. By the death of the beneficiary, pending the suit, there was neither an abatement of the action in the common law sense, nor was the cause of action to be compensated for discharged.'

"We are of the opinion that the right of action in this case, on the death of the plaintiff, survived to his administrator."

In the case of Meekin v. Railroad, supra, Judge VANN said: "The Revised Statutes, which are modified to some extent by these provisions of the Code, authorize an executor or administrator to maintain an action 'for wrongs done to the property rights, or interests of another,' after his death, against the wrong-doer, and after his death 'against his executors or administrators in the same manner and with the like effect in all respects as actions founded upon contract.' This provision, however, does not extend to actions for slander, libel, assault and battery, or false imprisonment, nor to actions 'for injuries to the person of the plaintiff or to the person of the testator or intestate of any executor or administrator.' [2 Rev. Stat. (9 Ed.), p. 1907.] The question, therefore, is whether the right of action created by the Act of 1847, and continued by the Code of Civil Procedure, is to recover damages for wrongs done to the property rights or interests of another, or for injuries to the person of the decedent. Some confusion has arisen because the statute creates a property right out of an injury to the person, and confers it, not upon the one injured, but upon his representatives, for the benefit of his wife and next of kin. The theory of the statute is that damages should be recovered for injuries to the

estate of the beneficiaries of the action, which in-
juries were caused by the death of the decedent. The
beneficiaries named in the statute sustain such a legal
relation to the deceased, by blood or marriage, that
it is presumed they would have been pecuniarily bene-
fited by his continuance in life, and hence damages are
allowed for a wrongful act or omission causing his
death. If he had lived, the support, education, or
services required from him by law, as well as benefits
in the nature of gifts conferred in the past, might
have been continued, to the pecuniary advantage of
the beneficiary. So, the decedent, by continuing to
live, might increase his estate, and thus increase the
amount to be inherited from him upon his death in the
course of nature.''

In the case of Quinn v. Moore, supra, the court
used the following language: ''The interest of Mrs.
Kerns was also assignable. In respect to purely per-
sonal torts, it is true that at common law the right
of action ceases with the life of the injured party. . . .
The theory of the statute is that the next of kin have
a pecuniary interest in the life of the person killed,
and the value of this interest is the amount for which
the jury are to give their verdict. Neither the personal
wrong or outrage to the decedent, nor the pain and
suffering he may have endured, are to be taken into
the account. These would be the foundation of the
action, and would furnish the criterion of damages,
if death had not ensued, and the injured party had
brought the suit. But the claim of the administrator,
and through him of the next of kin, is altogether dif-
ferent. The statute imputes to them a direct pecuniary
loss, in being deprived of a life to them of greater
or less value. For example, in the present case James
Kerns was a minor. His mother was, by law, entitled
to his services until he should come of age. Of these

she was deprived by the wrongful or negligent act of the defendants, which destroyed his life. The common law gave no action for this injury. The statute, possibly with greater justice, declares a different principle, and holds the wrong-doer liable to make compensation. . . . The interest which a person has in the life of another on whom he is dependent, or to whose services he is entitled, the Legislature have chosen to regard as a pecuniary right, a right having the essential attributes of property, so that, when it is taken away, compensation is due. . . . The rights and interests, for tortious injuries to which this statute preserves the right of action, have frequently been considered; and it is generally conceded that they must be pecuniary rights or interests by injuries to which the estate of the deceased is diminished.''

In Hegerich v. Keddie, 99 N. Y. 258, 52 Am. Rep. 25, 1 N. E. 787, it was held that the cause of action for damages from negligence resulting in death abates upon the death of the wrong-doer, and that an action cannot be maintained against his representatives. This is a necessary result from the fact that the Code modifies the Revised Statutes and the common law as to the personal representatives of the person injured, and not as to those of the person who inflicted the injury. [Littlewood v. New York, 89 N. Y. 24.] . . . ''Thus it appears, both from the statute and the authorities, that the damages awarded for the negligent act are such as result to the property rights of the person or persons for whose benefit the cause of action was created. Nothing is allowed for a personal injury to the personal representatives or to the beneficiaries, but the allowance is simply for injuries to the estate of the latter caused by the wrongful act. The statute, as it has been held, is not simply remedial, but creates a new cause of action in favor of the personal representatives of the deceased, which is wholly distinct from, and not a revivor of, the cause of action which,

if he had survived, he would have had for his bodily injury. 'Although the action can be maintained only in the cases in which it could have been brought by the deceased if he had survived, the damages, nevertheless, are given upon different principles and for different causes. In an action brought by a person injured, but not fatally, by the negligence of another, he recovers for his pecuniary loss, and in addition for his pain and suffering of mind and body, while under the statute it is not the recompense which would have belonged to him which is awarded to his personal representatives, but the damages are to be estimated 'with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person.' [Whitford v. Panama R. Co., 23 N. Y. 465, 489.] As, in the language of the statute, 'the damages awarded to the plaintiff' are to be estimated on the basis of 'a fair and just compensation for the pecuniary injuries resulting from the decedent's death to the person or persons for whose benefit the action is brought,' we think the injury is for a wrong done 'to the property, rights or interests' of the beneficiary, and that hence the cause of action survives; the recovery, if any, being a part of his estate, the same as it would have been if collected and paid over before his death.''

The Meekin case has since been followed in New York.

In Countryman v. Railroad, 166 N. Y. l. c. 209, it is said: ''In Meekin v. Brooklyn Heights R. Co., 164 N. Y. 145, it was held that this cause of action is a property right which is not affected by the death of the administrator who is the sole next of kin of the decedent and vested in his legal representatives.''

In Pitkin v. Railroad, supra, where the sole beneficiary died before the trial, it was held that the action did not abate. In discussing this question the court says: ''The right to these damages is a right of

property, which accrues at the moment of the negligent killing, and at such moment becomes vested in the beneficiary, for whose benefit the action may be maintained. The right to such damages which thus accrues becomes an asset in the estate of the beneficiary designated by the statute, and the death of such beneficiary does not prevent or terminate a right of action to recover damages which have thus been by him suffered. [Meekin v. Brooklyn Heights R. Co., 164 N. Y. 145.]''

From this resume of authorities cited, it is seen that some respectable courts sustain the contention presented by counsel for respondent, namely, that the right of a minor to the care, support and maintenance of their parents is a property right, and that when they are deprived of that right by the wrongful killing of the parent, the cause of action created by sections 2864 and 2865, Revised Statutes 1899, and that where the minor dies before the damages are collected, his cause of action will survive under said sections 96 and 97 in favor of the executor and administrator of his estate.

After a careful consideration of those cases and the reasons advanced by the courts for so holding, the conclusions reached in all of them seem to me to be unsound, and do great violence to the elementary principles of the common law and the statutes providing for the survival of actions.

The language of Judge VALLIANT, before quoted from in the case of Behen v. Transit Co., supra, was *obiter*, and was in express terms overruled by this court in the case of Bates v. Sylvester, supra. So under those conditions, his remarks are not authoritative or binding upon this court, and are entitled to only such consideration as should be given to the individual opinion of the distinguished and learned jurist who uttered them, which, however, carries great weight with the writer. But that case like all of the others

relied upon by respondent's counsel, ignores the distinction between the laws that govern personal rights and those that govern the rights of property.

The former govern, among other rights, the social and domestic relations of persons, while the latter control the rights of property. The violation of the former is not the violation of a property right, but is the violation of a social duty or a wrong done to the domestic relations. A wrong done to society is denominated a misdemeanor or a crime, and those to the domestic relations and to property are called civil wrongs or torts. The former is punishable by imprisonment or fine, payable to the State; and the latter is generally righted by the wrong-doer paying the damages done by him to the injured party.

By applying these observations to the case at bar, we would convict appellant of violating the domestic relations of respondent's intestate, that is, of wrongfully taking the lives of deceased's father and mother, and thereby deprive him of his legal rights to have his parents to care for, support and educate him, for which he is entitled to recover pecuniary damages in dollars and cents; but it would clearly be a misnomer to say, nor could it be logically contended, that the wrongful killing of deceased's parents was a wrong done to his property, or to his property rights. It would be just as logical to say the wrongful killing of the husband would be a wrong and injury to the wife's property rights, and that upon her death the cause of action given to her by said sections 2864 and 2865 would upon her death, under said section 96, survive in favor of her executor and administrator, yet every court in Christendom, so far as my knowledge and investigation has gone, are unanimous in holding, under those statutes, her cause of action does not survive but abates with her death. But, if the minor's cause of action, which is given by the same statute that gives to the wife hers, does not abate with the

former's death, then by what process of reasoning can it be logically contended the wife's cause of action abates upon her death? Certainly such an argument cannot be based upon the ground that the husband did not owe the wife the same care, support and maintenance that he and his wife owed to their minor children. Under our laws, not only does he owe her the same duty, but if he does not perform it, she may sue for and compel him to properly care for and support her, just as their minor children may do; and not only that, but so grave is the offense of the husband in not caring for and supporting his wife, she may on that account sue for and obtain a divorce from him.

Could it be seriously contended that the wrongful killing of a woman's husband is an injury to her property rights? I think not, yet she is just as much entitled to the care, society and support of her husband as are his minor children. According to all laws, excepting the cases before considered, the unlawful killing of a husband or father is a wrong done to the personal rights of the wife and the child, and not to their property rights. [Bates v. Sylvester, supra; Gibbs v. Hannibal, supra.] `

This must be so in the very nature of things, for sections 2864 and 2865 give the widow and minor children a cause of action, even though the husband and father had no property or income of any kind whatever, and was totally incapable of earning a dollar for his own support, much less to care for and support them. In fact, his mental and physical conditions might be such as to constitute him a most grievous care and burden to them, instead of a comfort and support, yet under sections 2864 and 2865 they would be entitled to a recovery for his unlawful death. If that is true, and it cannot be questioned, then their cause of action is given by those sections because of the violation of their domestic relations, and the wrong done to their personal rights, and not because any

wrong was done to their property interest, for he had none to be injured.

And if those sections give the widow and minor children a cause of action for the wrongful death of their husband and father, because that wrong was an injury to their property or property interests, then, clearly, in a case like the one before supposed, neither of them would have a cause of action under those sections against the wrong-doer. That is self-evident. Yet, as before stated, no court in Christendom has or would hold that the widow or minor children would not have a cause of action in that kind of a case.

Again, the minor might lack just one day of being of age when his father or mother was killed, still that fact would not interfere in the least with his right to a recovery of the $5,000, under the first section mentioned, or to the actual damages sustained under the latter. That being true, the right to recover the damages could not be based upon the injury done to his property rights, for under the first section, he would recover $5,000, when under no circumstances could he expect to receive but a few dollars, at the outside, from his father for that one day's care and support. It is elementary in case of injuries to property, the measure of damages is just compensation, and not a *penalty* of $5,000, no more or no less, as this court has repeatedly held must be paid where death ensues under the former section.

The error learned counsel for respondent has fallen into, as have also the able courts whose opinions he relies upon in support of his contention in this case, consists in confusing the *pecuniary loss sustained by a minor child, caused by the wrongful death of his or her father or mother, with the damages done to his or her property or property interests by a wrongful act of another.* While the child has sustained *a pecuniary loss* or damage in both cases, and is entitled to a recovery in each, yet the injury to the one is not the

same as the injury to the other—the former is an injury to his personal rights, and the latter is an injury to property rights; nor is the measure of damages the same in each case, as before pointed out. This palpable error is the very corner stone upon which those courts which entertain different views from those entertained by this court base their entire argument in favor of the survival of such a cause of action under sections of their statute which are similar to sections 96 and 97 of our statutes; and without that false basis upon which to rest, the opinions of those able courts would be totally destitute of every vestige of reason and plausibility to support them.

Counsel for respondent in discussing the cases of Behen v. Transit Co., and Seward v. Vera Cruz, supra, betray their appreciation of the weakness of the argument and reasoning advanced by those courts in support of their holding that the wrongful killing of a parent is an injury to the property rights of his minor children, by using this language: "The argument in both those cases is to the effect that the statute gives a right of action to recover the pecuniary loss that the plaintiff has sustained in the death of the person killed. The arguments in both cases would apply more literally to a case arising under the next succeeding section of our Damage Act than to one arising, as does this case, under section 2864, because under this section the damages are fixed at $5,000, whilst in the next section the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death to the surviving parties who may be entitled to sue, and also having regard to the mitigating circumstances attending such wrongful act, neglect or default. But although the statute fixes the amount of damages in the one section and leaves it to be fixed by the jury in the other, there is no difference in principle involved—in both cases the damages are

given as compensation to the plaintiff for his *pecuniary loss* in the death of the person killed, or for the suffering of that person.'' The substance of these remarks of counsel are expressed in the opinions of some two or three of the courts which entertain his views upon this question of survival. He, as well as those courts, appreciate the fact that if the recovery is had under section 2864, the amount of the verdict and judgment must be for the penalty of that statute, namely, $5,000, and not for the amount of the pecuniary loss the child has sustained by reason of his being deprived of his legal right to be supported and educated. Such a verdict and judgment is necessarily inconsistent with the idea of compensation for the pecuniary loss sustained by the child; yet, if respondent is entitled to a recovery at all, it must be for the entire $5,000, and not for such sum as would compensate the deceased for the actual damages sustained by him in consequence of the unlawful killing of his father and mother. That is true for the reason that had the deceased lived he could have recovered only the $5,000, penalty prescribed by section 2864, and not just compensation authorized by section 2865. [Casey v. Railroad, 205 Mo. 721.]

It must therefore follow, that, if the cause of action survived in favor of the respondent, it must have been the same cause of action which his intestate had while living, which was a right of action for the recovery of $5,000 for the injury done to his personal rights and not to his property rights or interests. Consequently, sections 96 and 97 have no application, for the reason they apply only to actions relating to property interests. [Bates v. Sylvester, supra; Gibbs v. City of Hannibal, supra.]

Besides this, there is another substantial reason for holding the theory of counsel for respondent is not tenable; and that is, if sections 2864 and 2865 confer upon the minor children a cause of action for

the violation of their property rights within the meaning of sections 96 and 97, and not for the injury done to their personal rights, then section 2864, the one respondent must recover upon if at all, is clearly unconstitutional, null and void, for the reason, as we have repeatedly held, and correctly so in my judgment, namely, that whenever a passenger dies from an injury resulting from the negligence of a servant whilst running and operating a train of cars, the owner thereof, under section 2864, shall forfeit and pay the sum of five thousand dollars, to the husband or wife of the deceased; and, if there be no husband or wife, then to the minor children of the deceased; and that under such facts a recovery cannot be had for a smaller sum under section 2865. [Casey v. Railroad, supra.] The reason for the distinction made by the Legislature between the two sections was for the purpose of better protecting the traveling public against the negligence and carelessness of common carriers. By the imposition of the five thousand dollars penalty, by the former section, in favor of the beneficiaries named therein, the Legislature intended thereby not only to compensate them for the pecuniary losses sustained in consequence of the injury done them, but also to induce carriers to exercise a higher degree of care toward the traveling public and for the individual safety of the passenger than they would otherwise do. It is upon that theory the constitutionality of that section is maintained, otherwise it would be open to the objections that it authorized the taking of private property for private use, and the taking of property without due process of law, contrary to sections 20 and 30 of article 2 of the Constitution of 1875.

If that is true, then it cannot be successfully contended that section 2864 was enacted simply for the purpose of affording compensation for the damages sustained by the beneficiaries mentioned therein, as is true of section 2865. Consequently, this case, if main-

tainable, at all, was properly brought under the former section, and could not have been brought under the latter. So, instead of these sections being susceptible of the construction suggested by counsel for respondent, namely, to afford compensation for the damages done to the property rights of the minor children, their purpose was just the opposite—primarily, to secure the *personal safety of the passenger;* and, secondarily, to compensate those who should be damaged by being deprived of their marital and parental relations, by the wrongful act of the carrier, in the order stated in said section. If this is not true, but respondent's contention is, which is to the effect that both of these sections were intended to compensate the minor for damages done to his property interests, then, clearly, section 2864 would be unconstitutional and void, for the reason that it would then discriminate in favor of the property interest of the class of persons mentioned therein, which provides that the carrier shall pay to them greater damages for the injuries done to their property interests than the carrier is compelled by section 2865 to pay to all other persons, within the jurisdiction of the State, who are mentioned in the latter section, for doing the same character of injuries to the same character of property interests; and that, too, notwithstanding the fact that the extent of the damage done to the former may not in fact be so great in degree as that done to the latter. Under each section the death of the parent would be the injury done, and the damages under each would be the taking from them of their property rights to be cared for, supported and educated by their parents; which, under the former, might not be for a period of more than one day, and under the latter, it might be for twenty-one years lacking one day; and under the former, the amount of the compensation to be awarded would have to be $5,000, no more or less, while under

the latter, it might be one dollar or five thousand dollars, or any other sum within those limits.

Clearly, if that construction of respondent is to be placed upon those sections, then the former would do violence to section 1 of the 14th amendment to the Constitution of the United States, which provides that no State shall make or enforce any law which shall deny to any person within its jurisdiction the equal protection of the laws. And any construction of a State statute which brings it in conflict with that provision of the Federal Constitution will nullify it as effectually as if it has, in the first instance, been enacted in conflict with that instrument. [Yick Wo v. Hopkins, 118 U. S. 356.] For that reason, if for no other, respondent's construction should not be placed upon those sections.

Not only this, but if we should adopt the construction of sections 2864 and 2865 contended for by counsel for respondent, then he would have no standing in court, for the additional reason that by so doing we would necessarily bring 2864 in conflict with the provision of the Constitution of the United States, before mentioned, and thereby nullify the very section of the statute upon which his case is bottomed, and without which neither he nor his intestate could have recovered, had he lived.

There is another reason why the cause of action given by section 2864 to Clifford Ragel for the wrongful death of his father and mother did not survive him under sections 96 and 97, in favor of the administrator of his estate, even though it be conceded the latter sections apply generally to personal injuries, as well as to injuries done to property rights, and that is this: Where there are two statutes and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that if standing alone it would include the same matter, and

thus conflict with each other, then the former act must be taken as constituting an exception, if not a repeal of the latter or general statute, and especially is this true where the special statute was enacted subsequent to the passage of the general. This rule of statutory construction is well grounded in our jurisprudence, as is shown by the following adjudications: Ruschenberg v. Railroad, 161 Mo. 70; State ex rel. v. Dabbs, 182 Mo. l. c. 366; State ex rel. v. Frazier, 98 Mo. 426; State ex rel. v. Slover, 134 Mo. l. c. 19.

It is perfectly clear from reading these statutes, that the provisions of section 2864 provide specially who shall sue for and recover the penalty given thereby for the wrongful death of the parties referred to therein.

It is thus seen that this particular statute provides specially and specifically for all who may sue for the penalty imposed by said section 2864, and neither the executor nor the administrator of any deceased party referred to therein is included among those who are authorized to sue for the penalty. The entire matter is covered by that section and excludes the application of any other statute thereto. While, under the concession before made, sections 96 and 97 might be sufficiently broad, if standing alone, to embrace suits of this character, and if section 2864 is not to be considered an exception to the latter sections, then there would be a clear conflict between them; and since section 2864 was subsequently enacted, and all carried from one revision to another for over fifty years, we must hold it to be either an exception to the former sections or a repeal of them to the extent of their application to the actions mentioned in sections 2864 and 2865.

So, viewing this case from any stand-point you may, we are fully satisfied that Clifford Ragel's cause of action did not survive him, but abated upon his death, and we must, therefore, hold respondent has no

right to maintain this suit, and, consequently, has no standing in court.

The judgment of the circuit court is reversed, and judgment will be here entered for appellant. It is so ordered.

All concur.